# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| **TOMMY E. SHAFER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 1:05CV91MLM** |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of Jo

Anne B. Barnhart ("Defendant") denying the applications for disability insurance benefits under Title

II of the Social Security Act, 42 U.S.C. §§ 401 et seq., and for Supplemental Security Income

("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq, filed by Plaintiff Tommy E. Shafer

("Plaintiff"). Plaintiff has filed a brief in support of his complaint. Doc. 9. Defendant has filed a brief

in support of her answer. Doc. 11. The parties consented to the jurisdiction of the undersigned United

States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 4.

## I.
## PROCEDURAL HISTORY

On July 25, 2002, Plaintiff filed an application for disability insurance benefits and SSI. (Tr.

49-51). The applications were denied.[1] (Tr. 31-34). Plaintiff requested a hearing before an

Administrative Law Judge ("ALJ") (Tr. 35-37). A hearing was held on July 22, 2004, before ALJ

---

[1]    Citing transcript pages 124-25, Defendant states that Plaintiff filed a Request for
Reconsideration which was denied. These transcript pages do not reference such documentation.
However, as noted by Defendant, this being a Disability Redesign Prototype case originating in
Missouri, a reconsideration determination was not necessary prior to elevating the matter to the
hearings level.  20 C.F.R. § § 404.906, 416.1406.

Robert G. O'Blennis. (Tr. 391-426). By decision dated September 17, 2004, the ALJ determined that Plaintiff was not under a disability as defined by the Act. (Tr. 11-15).

Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. (Tr. 6-7). On April 14, 2005, the Appeals Council denied Plaintiff's request. (Tr. 3-5). Thus, the decision of the ALJ stands as the final decision of the commissioner.

## II.
## TESTIMONY BEFORE THE ALJ

### A. Testimony of Plaintiff:

Plaintiff testified that, at the time of the hearing, he was fifty-seven years old; that he was right-handed; and that he was living alone. Plaintiff further testified that he completed school through the eighth grade and received a high school equivalency degree while serving in the United States military. Plaintiff further testified that he completed a course in automobile mechanics in about 1970 and that, following the completion of this course, he worked as an automobile mechanic. Plaintiff testified that he worked at Barry's Wood Products and at C.W.I., a waste disposal company; that at C.W.I. he worked as a mechanic performing truck maintenance; and that he worked at C.W.I. for about two years. Plaintiff further testified that after working at C.W.I. he worked at J.P. Tractor Salvage; that J.P. Tractor Salvage was his last place of employment prior to the hearing before the ALJ; that at J.P. Tractor Salvage he worked as a mechanic repairing and rebuilding farm tractors; that he worked for J.P. Tractor Salvage for a little over six years; and that he left J.P. Tractor Salvage because his back hurt him so badly from the heavy lifting and tractor work that he was not able to satisfy the employer with a "good day's work." Plaintiff testified that he quit working about two years prior to the date of the hearing. (Tr. 394-400).

Plaintiff further testified that, at the time of the hearing, he was receiving medical treatment at the Veterans Affairs ("VA") Hospital in the form of pain medication and that this medication included Tylenol with Codeine, Naprosyn, methocarbomal, and a muscle relaxer. (Tr. 401).

Plaintiff testified that he typically gets up between 5 o'clock and 7 o'clock in the morning, depending on what time he is able to fall asleep the night before; that he tries to go to bed between 9:30 and 10 p.m.; that after he gets up from bed and feeds his four dogs, he takes care of household chores, including the dishes, laundry, and anything else around the house which needs to be done; and that he does grocery shopping and yard work. Additionally, Plaintiff testified that he talks on the phone a lot and occasionally visits with family and friends. Plaintiff also testified that he belongs to the Veterans of Foreign Wars; that he does not attend meetings; that he goes deer hunting; and that when he hunts he does not go very far from his vehicle. (Tr. 403-406). Plaintiff further testified that he can lift 100 pounds; that he did not know if he could set 100 pounds on a pallet; that he cannot sit for very long; that he cannot stand for more than forty-five minutes without his legs beginning to burn because of circulation problems; that sitting in an easy chair "makes the blood flow[] better"; and that he cannot watch an hour long television program without getting up and moving around. Plaintiff said that he has no problem taking care of day to day personal needs with the exception of tying his shoes which he testified is "a little painful" on his back "at times." (Tr. 407-409).

Plaintiff testified that he has problems with depression; that he does not receive medicine for depression; that he has arthritis in his right shoulder; that this arthritis results in extreme pain; that he can lift a five pound bucket of water with his right arm; that he has bursitis in both shoulders; that he has problems with his hands and drops things; that his problems with his hands had been going on for a few years and occur about once a month; and that his hands constantly tingle and stiffen up. Plaintiff

also testified that he has a hiatal hernia which makes him feel like he is having a heart attack and which sends pain through his chest and arms. (Tr. 410-15).

Plaintiff testified that he suffers from gout, which affects his knees, ankles and every joint in his lower body. Plaintiff further testified that in June 2004 he used crutches because of gout; that the cartilage in his knees has been destroyed by gout; that he puts Icy Hot or some other arthritis medication on his knees every night; that this "seems to calm it a little bit"; that if the wind blows when he has gout it hurts his foot; and that when he has gout he cannot put on his shoes. (Tr. 416- 418).


Plaintiff testified that he has followed what the VA doctors have told him to do in regard to treatment. (Tr. 419).

**B. Testimony of Brenda Young**

Brenda Young, an occupational consultant, testified before the ALJ. Ms. Young said that she believed that a person who could occasionally lift 100 pounds and more frequently lift fifty pounds and who would be limited to occasionally bending and also not working above the shoulder level with the right upper dominant extremity could not perform Plaintiff's past relevant work as a mechanic. She further said that all mechanic jobs would require significant amounts of bending. (Tr. 423). Ms. Young further testified that medium unskilled work was also precluded because such work also required bending. (Tr. 424).

### III.
### MEDICAL RECORDS

Records of the VA Hospital dated October 16, 2001, reflect that Plaintiff saw Napoleon Almaria, M.D. for a regular checkup on this date. Dr. Almaria's notes of this visit state that Plaintiff said he was not experiencing any pain; that Dr. Almaria and plaintiff discussed the benefits of regular

exercise, healthful eating and quitting smoking; that Plaintiff told Dr. Almaria about his joint problems; and that Dr. Almaria told Plaintiff to maintain a low salt diet and to exercise. Notes from this date also reflect that the a depression screening was performed on Plaintiff; that no signs of depression were found; that Plaintiff had not been bothered by a lack of interest or loss of pleasure in doing things; that Plaintiff was alert and oriented times three; and that Plaintiff reported that he had no feelings of depression or hopelessness. It was also noted on this date that Plaintiff read well. (Tr. 100).

Records from the VA Hospital reflect that Plaintiff saw Dr. Almaria on February 7, 2002; that Plaintiff had hypertension and a degenerative joint disease; that Dr. Almaria advised Plaintiff to maintain a low salt diet, to exercise, and to return in four months; and that Plaintiff reported that he was experiencing pain in his left shoulder. Dr. Almaria also reported on this date that Plaintiff complained of pain in one shoulder, numbness and tingling in an arm, weakness, dizziness, heart skipping, and a nose bleed on one side. (Tr. 108-109, 240-41).

Dr. Almaria's notes reflect that he saw Plaintiff on May 30, 2002; that Plaintiff had hypertension , degenerative joint disease, hypercholesterolemia, and slightly elevated liver enzyme; that Dr. Almaria planned to consult with Prashant J. Parekh, M.D., for an evaluation of Plaintiff's liver function; and that physical examination showed that Plaintiff's blood pressure was 131/80, his temperature was 97, his chest was clear, his heart was regular, his abdomen was soft, and he had negative edema. Dr. Almaria further reported that he continued Plaintiff on Lisinopril for blood pressure and Colchicine for gout and prescribed Etodolac for Plaintiff's degenerative joint disease; that Plaintiff was seen for a regularly scheduled appointment; that Plaintiff complained of an increase in lower back pain, pain in the legs, and soreness in the elbows which indicated that the gout medicine was not working; that Plaintiff's pain assessment score was 3; and that Dr. Almaria instructed Plaintiff to return for a follow up visit in five months. (Tr. 114, 232-36).

Dr. Parekh of the VA Hospital reported that he saw Plaintiff on July 16, 2002.  Dr. Parekh reported on this date that records reflected that Plaintiff was originally seen on August 25, 2000 for elevated levels of transaminases; that lab reports indicated that Plaintiff had elevated transaminases since 1998; that Plaintiff had aspartate amino transferals ("AST") enzyme levels ranging between 40-55 and amino alanine transferals ("ALT") enzyme levels ranging from 40-80; and that his cholesterol was above 200 and his triglyceride ranged from 250-300.  Dr. Parekh reported that viral hepatitis had been ruled out; that a prior sonogram revealed no significant abnormalities; that Plaintiff was counseled about weight loss and control of hyperlipidemia; that once Plaintiff "got his cholesterol and triglyceride partially under control the two most recent transaminases had temporarily returned to normal limits." Dr. Parekh stated that the plan for Plaintiff included monitoring the serial liver profile, iron studies, repeating a sonogram of the abdomen, recounseling Plaintiff about obesity and control of hyperlipidemia, and avoiding all hepatoxic drugs.  (Tr. 230-31).

A radiology report states that on August 20, 2002, Plaintiff had a gallbladder ultrasound and that his gallbladder was essentially unremarkable.  (Tr. 170).  Notes of this date state that Plaintiff "was offered a liver biopsy, but [did] not want to pursue this invasive GI work up at present given the recent normal ALT."  Weight control, control of hyperlipidemia, and monitoring serial liver profiles were recommended. (Tr. 228).

Records of Thomas Sparkman, M.D., reflect that Plaintiff was seen on August 21, 2002, for a consultative examination.  Dr. Sparkman's report of this visit states that Plaintiff drove about 60 miles to the office; the he displayed no ill effects from the trip; that Plaintiff brought with him medical reports from the VA which indicated that Plaintiff  had last been seen on July 16, 2002; that Plaintiff reported a history of hypertension, hyperlipidemia, gout and osteoarthritis; that Plaintiff had a history of chronically elevated hepatic transaminases and no history of alcohol intake; and that Plaintiff had

hyperlipidemia and had non-alcoholic steatohepatitus due to obesity and hyperlipidemia. (Tr. 135).

Doctor Sparkman's report further summarizes the records Plaintiff brought from the VA Hospital and states that between January and April 2002, Plaintiff's serum transaminases returned to normal due to weight loss and control of hyperlipidemia; that as Plaintiffs weight increased his triglyceride, cholesterol and hyper transaminases became elevated; that Plaintiff was on hepatoxic drugs, including Elavil, Colchicine and Lodine all of which cause elevated levels of transaminases; that Plaintiff reported to the VA Hospital in May of 2002 that he had lower back pain in addition to pain in his legs and elbows; and that Plaintiff reported to the VA Hospital that he quit working in 1996 as he could not work full time because of his back ache and felt that it was not appropriate to work less than a full day. (Tr. 136).

Dr. Sparkman's report of Plaintiff's August 21, 2002, visit further states that Plaintiff said that his hand grips were weak; that he had discomfort in his arms and shoulders; that he could lift fifty pounds, could comfortably sit for thirty minutes, stand for an hour, and walk three blocks; that his legs were cold at all times; and that he had constant pain in his legs and occasional pain in his back. (Tr. 136). Dr. Sparkman's notes reflect that Plaintiff's blood pressure was 144/84, his pulse was 80, and his temperature was 98 degrees and that Plaintiff weighed 173 pounds and was 5 feet, 6 and ½ inches. (Tr. 137).

Dr. Sparkman's report also states that a review of Plaintiff's systems showed, in regard to Plaintiff's chest, that there was a regular rhythm; in regard to Plaintiff's back, he had he had a normal range of motion in his peripheral joints, with no swelling, tenderness or inflamation; and in regard to Plaintiff's lower extremities, he had normal range of motion at the hips, knees and ankles and an ability to ambulate on toes and heels with no compromise of gait or station. Dr. Sparkman further reported

that it was his impression that Plaintiff had hypertension, a history of arthritis, hernia, hyperlipidemia, and hepatic serum transaminases; that with dietary restrictions and weight loss Plaintiff's liver enzymes had recently returned to normal, only to be subsequently elevated; that Plaintiff showed an ability to perform work related functions such as sitting, standing, walking, lifting, carrying, and handling objects; and that there was no compromise of Plaintiff's hearing or speaking ability. Dr. Sparkman noted Plaintiff reported that the day before the examination he spent seven hours watching television and described no ill effect from sitting and watching the electronic tube. (Tr. 138-39).

Dr. Holly Weems completed a Psychiatric Review Technique Form on September 11, 2002. (Tr. 143). Dr. Weems stated on this Form that there was insufficient evidence with which to substantiate the presence of a depression or other psychological disorder and that Plaintiff did not complain of depression or symptoms of depression. (Tr. 155).

Progress notes state that Plaintiff was seen at the VA Hospital on October 30, 2002; that Plaintiff was alert/oriented and ambulatory; that his chief complaint was numbness in his arms and hands; that Plaintiff reported no feelings of depression or hopelessness; that Plaintiff reported no pain and his pain score was zero; that his level of understanding was good; and that Plaintiff was received nutritional counseling. (Tr. 221-26).

Progress notes reflect that Plaintiff was seen at the VA Hospital on April 16, 2003. (Tr. 216). Notes of this date state that Plaintiff's pain assessment score was 9 and that Plaintiff reported the onset/duration of his current pain was less than one month and that his pain was exacerbated by sitting, walking, and working. (Tr. 217-20).

A radiology report from the VA Hospital reflects that on June 2, 2003, Plaintiff had an M.R.I. of the lumbar spine which showed that the intervertebral disc space was well maintained and that there was a mild bulging disc at L1-L2 without definite signs of herniation. (Tr. 169).

Dr. Almaria reported on June 3, 2003, that his assessment of Plaintiff was low back pain, hypercholesterolemia, esophageal reflux, and hypertension; that Plaintiff's low density lipoprotein ("LDL") was 160 ; that Plaintiff could not be on statin medication to reduce his cholesterol level as this medication elevates his liver enzymes; that Plaintiff was advised to eat a low cholesterol diet and to exercise; and that because of Plaintiff's back pain, he cannot exercise well. Dr. Almaria also reported that physical examination showed Plaintiff's blood pressure was 151/80, that his heart was regular, and that he had no leg edema. (Tr. 221).

Progress notes of December 8, 2003, state that physical examination revealed excessive curve of the lumbar lordosis and a slight muscle spasm; that Plaintiff complained "of pain radiation to left hamstrings at times"; that the assessment was chronic low back pain and history of gout; that Plaintiff's pain assessment score was 7; and that Plaintiff was to return to the clinic in three months. (Tr. 204-209). A radiology report of this same date states that views of Plaintiff's spine showed there were osteophpytes present; that the disc spaces appeared fairly well maintained; that Plaintiff had mild scoliosis; and that there was plaque in the abdominal area. (Tr. 168-69).

Progress notes of January 27, 2004, state that Plaintiff presented complaining of chest pain which he had for four days and that physical examination showed that Plaintiff was conscious, alert, oriented times three, and not in any distress; that his lungs were clear to auscultation bilaterally; that his heart had regular rhythm; that his abdomen was soft with no tenderness; and that he had no edema in his extremities.  Notes of this date further state that an EKG showed normal sinus rhythm and no ischemic changes; that a chest x-ray showed no acute cardiopulmonary process; and that Plaintiff's cardiac enzymes were negative.  It was noted that Plaintiff's blood pressure was 184/98; that Plaintiff was given additional blood pressure medication; and that Plaintiff left ambulatory.  (Tr. 198-202). A radiology report of this same date states that views of Plaintiff's chest showed no evidence of acute

cardiopulmonary change since a previous examination and that Plaintiff's heart was within normal limits in size. (Tr. 167-68).

Eugene C. Hansbrough, M.D., reported on January 27, 2004, that Plaintiff had "impingement syndrome right shoulder, knee pain right and left without x-rays" and low back pain; that "SLR [was] mildly negative and no weakness"; and that Plaintiff required a neurosurgery evaluation. (Tr. 180).

A radiology report dated February 10, 2004, reflects that the impression from views of Plaintiff's knees was mild bilateral degenerative arthritis. (Tr. 167). Another radiology report of this same date states that views of Plaintiff's knees showed that there was no fracture or dislocation of the knees; that small spurs were present; that calcification of the soft tissue of the knee joints probably represented fabella; and that the impression was mild bilateral degenerative arthritis. (Tr. 167).

Dr. Hansbrough reported on February 19, 2004, that Plaintiff's arthrogram was negative; that Plaintiff declined injection in the knees; and that he had "only mild degenerative arthritis." (Tr. 180).

Progress notes reflect that Plaintiff was seen at the VA Hospital on March 2, 2004, and that physical examination showed he was alert, oriented times three, not in acute distress, cardiac or pulmonary; that his chest had good air entry without any rales or rhonchi; that his heart was without any murmur; that his abdomen was soft and nontender; and that he had no edema in his extremities. Notes further state that Plaintiff's back examination was unremarkable and had not changed from his last visit of February 17, 2004. Notes of this date also state that Plaintiff had relief with Tylenol No. 3; that a lipid assessment was done; that Plaintiff's triglyceride level was not under control with Zocor; that he was started on Gemfibrozil; and that he was advised to follow a low-cholesterol, low-sodium diet and that if problems in his back continued he could be referred to an orthopedist. (Tr. 186). Progress notes of March 2, 2004, further reflect that Plaintiff's pain assessment score was 6; that

Plaintiff described the pain in his low back, neck, shoulders, and knees as dull, sharp, aching, and stabbing; and that Plaintiff was ordered to return to the clinic in eight to twelve months. (Tr. 190).

A radiology report of March 19, 2004 states that Plaintiff had an MRI of his spine; that the M.R.I. showed mild changes of degenerative arthritis, mild bulging disc at L1-L2 interspaces without evidence of definite herniation, and well maintained intervertebral disc spaces; and that the impression included mild bulging disc. (Tr. 165).

Primary care progress notes dated August 5, 2004, state that physical examination showed that Plaintiff was alert, oriented times three, looked his age, and was not in cardiopulmonary distress; that his chest was without rales or rhonchi; that his heart was without any murmur; and that he did not have edema in his extremities. Notes further state that Plaintiff denied chest pain. Pl. Ex. 1.[2]

---

[2]    With his brief Plaintiff submitted medical records dated from August through November 2004, which records were not considered by the ALJ. Plaintiff contends that he submitted these records to the Appeals Council but that the Appeals Council did not consider them; as such, they are not included in the official transcript.

42 U.S.C. § 405(g) restricts court review to evidence which was before the Commissioner at the time of her decision. While additional evidence can form the basis for remand under §405(g), remand is appropriate only upon a showing by the claimant that the new evidence is material and that there was good cause for failing to incorporate the evidence into the record in a prior proceeding. See Jones v. Callahan, 122 F.3d 1148, 1154 (8th Cir. 1997) (citing Thomas v. Sullivan, 928 F.2d 255, 260 (8th Cir. 1991)).

"To be considered material, the new evidence must be 'non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied.'" Id. at 1154 (quoting Woolf v. Shalala, 3 F.3d 1210, 1215 (8th Cir. 1993)). See also Sullins v. Shalala, 25 F.3d 601, 604-05 (8th Cir. 1994); Smith v. Shalala, 987 F.2d 1371, 1375 (8th Cir. 1993); Delrosa v. Sullivan, 922 F.2d 480, 483-84 (8th Cir. 1991) (citing 42 U.S.C. § 405(g)). Moreover, it must be reasonably likely that the Commissioner's consideration of this new evidence would have resulted in an award of benefits. Jones, 122 F.3d at 1154; Woolf, 3 F.3d at1215.

Additionally, 20 C.F.R. § 404.970(b) provides that if new and material evidence is submitted to the Appeals Council:

[T]he Appeals Council shall consider the additional evidence only where it relates

Primary care progress notes dated September 29, 2004, state that Plaintiff complained of different symptoms and said that he has periodic chest pain related to exertion, that he felt depressed and had a loss of energy, and that he wanted to see a psychiatrist. Notes of this date further state that Plaintiff denied any suicidal or homicidal thoughts; that he was encouraged to restrict fat in his diet; and that Plaintiff "refused stool specimen slides for occult blood." Pl. Ex. 1.

---

to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

As such, newly submitted evidence becomes part of the administrative record even if the Appeals Council did not consider the new evidence. Nelson v. Sullivan, 966 F.2d 363, 366 (8th Cir. 1992) (citing Browning v. Sullivan, 958 F.2d 817, 823 n. 4 (8th Cir.1992)). Contra, Eads v. Sec'y of Health and Human Servs., 983 F.2d 815, 816-17 (7th Cir. 1993) (holding that evidence which the Appeals Council does not consider is not part of the administrative record) (citing FPC v. Transcontinental Gas Pipe Line Corp., 423 U.S. 326 (1976) (per curiam); United States v. Carlo Bianchi & Co., 373 U.S. 709, 715 (1963); Jones v. Sullivan, 954 F.2d 125, 128 (3d Cir.1991)). If the new evidence was not considered by the Appeals Council and if the evidence is material, upon review the court may remand the case to the Appeals Council. Nelson, 966 F.2d at 366. If the Appeals Council has considered the new evidence but declined to review the case, the court will, nonetheless, consider the new evidence as part of the administrative record. Id.

In the interests of justice this court will consider Plaintiff's additional evidence as it is not clear if Plaintiff submitted these records to the Appeals Council and, if so, the record does not establish whether the Appeals Council considered these additional records. The court notes, however, in regard to Plaintiff's physical ailments, these additional records are cumulative. While the psychiatric consultation records of October and November 2004 are not cumulative, as Plaintiff had not previously been treated for depression, the court finds for reasons fully set forth below that this new evidence would not have resulted in an award of benefits. See 20 C.F.R. §404.970(b). Moreover, with the exception of the August 2004 progress notes, the additional records submitted by Plaintiff do not address Plaintiff's condition for the time period for which benefits were denied as they address Plaintiff's condition after the date of the ALJ's decision. Id.

An echocardiogram report dated October 26, 2004, states that the impression was mild pulmonary insufficiency, mild tricuspid valve regurgitation, and mild to moderate mitral valve regurgitation. Pl. Ex. 1.

Psychiatrist consultation reports dated October 29 and November 2, 2004, both state that Plaintiff "has never had any psychiatric care or anitdepressants." These reports further state that Plaintiff was oriented; that his affect was bright; that he was irritable and depressed; that he had no delusions or hallucinations; and that the diagnosis was depressive disorder, NOS; and that he was prescribed Zoloft. Pl. Ex. 1.

Records of November 1, 2004, state that Plaintiff's hypertension was not under control and that he was to be followed in two weeks for a blood pressure check up. Pl. Ex. 1.

## IV.
## DECISION OF THE ALJ

The ALJ noted that Social Security Act defines disability as the inability to engage in any substantial gainful activity due to any medically determined physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less that twelve months.

Pursuant to Step 1 of the applicable sequential analysis the ALJ considered Plaintiff's employment history as an auto mechanic and rebuilder of automotive alternators and that Plaintiff had not worked in this capacity, or in another, since July 23, 2002, the alleged onset of disability. The ALJ noted that until this date, Plaintiff had a very good and steady work record with his best earnings in 1998.

Pursuant to Step 2 of the sequential analysis the ALJ considered Plaintiff's medical records. The ALJ noted that Plaintiff reported elevated hepatic transaminases as far back as 1998, which was reduced by weight loss and dietary restrictions. The ALJ also noted Plaintiff's claims of hypertension

and gout and noted that Plaintiff seemed to be doing well with all of his chronic claims monitored by prescription medication, a low salt diet and exercise.

The ALJ concluded that Plaintiff has mild degenerative disc disease of the lumbosacral spine, possible gout, hypertension, hyperlipidemia, hiatal hernia, and gastroesophageal reflux disease controlled by medication. The ALJ further concluded that Plaintiff's allegations of impairments, either alone or in combination, do not produce symptoms and limitations of sufficient severity to prevent the performance of all sustained work activity. He further concluded that Plaintiff has only slight abnormalities that do not significantly affect the performance of any basic work-related activities and that, therefore, he does not have a "severe" impairment as defined in 20 C.F.R. §§404.1521 and 416.921. The ALJ also found Plaintiff's allegations of disabling impairments not credible. Based on these findings, the ALJ determined that Plaintiff is not entitled to disability benefits.

<h3 style="text-align:center">V.<br>LEGAL STANDARDS</h3>

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. § § 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 788, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. § § 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. § § 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do

basic work activities …" Id. Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); Part 404, Subpart P, Appendix 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

Fourth, the impairment must prevent claimant from doing past relevant work. 20 C.F.R. § § 416.920(e), 404.1520(e). The burden rests with the claimant at this fourth step to establish his or her RFC. Eichelberger, 390 F.3d at 590-91; Young v. Afpel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's residual functional capacity and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § § 404.1520(f). Fifth, the severe impairment must prevent claimant from doing any other work. 20 C.F.R. §§416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to produce evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC").

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a

reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). In Bland v. Bowen, 861 F.2d 533 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

Id. at 535. See also Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994); Turley v. Sullivan, 939 F.2d 524, 528 (8th Cir. 1991).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1994); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022 (internal citations omitted). See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001) (internal citations omitted).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) The findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Education and Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months …." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

Baker v. Sec'y of Health and Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322. The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. Id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. Id.; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995); Robinson v. Sullivan, 956 F.2d 836, 841(8th Cir. 1992); Ricketts v. Sec'y of Health and Human Servs., 902 F.2d 661, 664 (8th Cir. 1990); Jeffery v. Sec'y of Health and Human Servs., 849 F.2d 1129, 1132 (8th Cir. 1988). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson, 956 F.2d at 841; Butler v. Sec'y of Health and Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ need only acknowledge and consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

Residual functional capacity is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a), and includes an assessment of physical abilities and mental

impairments. 20 C.F.R. § 404.1545(b-e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-7 (8th Cir. 1982) (en banc). The Commissioner must first prove that the claimant retains the residual functional capacity to perform other kinds of work. Id. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431(8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. Nevland, 204 F.3d at 857.

## VI.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position. Krogmeier, 294 F.3d at 1022.

Plaintiff alleges that substantial evidence does not support the ALJ's determination that he has no severe impairments; that the record supports the fact that he suffers from degenerative disc disease and chest pain; that the ALJ failed to consider whether his chest pain limits his ability to perform substantial gainful activity; that there is no question that Plaintiff suffers from pain secondary to his impairments; that the ALJ's consideration of Plaintiff's credibility was not consistent with the case law; that the ALJ incorrectly determined Plaintiff's residual functional capacity ("RFC") and failed to determine that there are jobs which Plaintiff can perform; that the ALJ did not consider the opinion of the vocational consultant; and that the Appeals Council failed to consider additional medical

evidence submitted by him. Upon reviewing the administrative record as a whole, the undersigned finds for the following reasons that the decision of the ALJ is supported by substantial evidence and that the issues raised by Plaintiff are without merit.

**A.     Plaintiff Does Not Suffer from Severe Impairments:**

Plaintiff contends that he was suffering from anxiety and stress, degenerative disc disorder, mild posterior bulging disc at L1- L2 and L3-L4, significant anterior bulging disc at L3-L4 and L4-L5, impingement syndrome right shoulder, bilateral knee pain, low back pain with radiculopathy in the left leg, gout, hypertension, gastroesophageal reflux disease, hyperlipidemia, hiatal hernia, mild pulmonary insufficiency, mild tricuspid valve regurgitation, mild to moderate mitral valve regurgitation, depressive disorder, and chest pain. He further contends that the ALJ erred in not finding that these impairments are severe.

After determining at Step 1 of the requisite sequential analysis under the Social Security Act, that Plaintiff has not engaged in substantial gainful activity since the date upon which he allegedly became disabled, the ALJ proceeded to the second step at which point he considered Plaintiff's medical history and treatment.

As noted by the ALJ, it is determined at Step 2 of the sequential analysis whether a claimant has a severe impairment or impairments which in combination are severe. 20 C.F.R. §§ 416.920 (c), 404.1520(c). At this second step of the sequential analysis, if a claimant is found not to have a "severe impairment" he is not disabled. Brown v. Barnhart, 390 F.3d 535,538 (8th Cir. 2004) (citing 20 C.F.R. § 404.1520(c)). "Severe impairment" is defined as any impairment, or combination of impairments that significantly limits physical or mental ability to perform basic work, not considering age, education and work experience." Id. (citing 20 C.F.R. § 404.1520(c)). Although the ALJ in the matter under consideration did determine that Plaintiff suffered from some medical maladies, he

additionally determined that these were slight abnormalities that did not significantly affect the performance of any basic work related activities. The ALJ, therefore, concluded that Plaintiff does not have a severe impairment as defined in 20 C.F.R. § § 404.1521 and 416.921.

Upon reaching his conclusion at Step 2, the ALJ considered that as of October 16, 2001, Plaintiff had no signs of depression. The court notes that Plaintiff testified at the hearing that he does not take medication for his depression[3]; that records of October 30, 2002 state that Plaintiff reported no feelings of depression or hopelessness; that on August 5, 2004, it was reported that Plaintiff was alert and oriented times three; that there are no records indicating that Plaintiff was treated for depression until he received a psychiatric consultation in October 2004; and that it was noted in October and November 2004 that Plaintiff had no suicidal thoughts, delusions or hallucinations. Plaintiff's failure to seek and/or receive treatment for depression is inconsistent with his claim that he suffers from depression. See Nelson v. Sullivan, 946 F.2d 1314, 1317 (8th Cir. 1991); James for James v. Bowen, 870 F.2d 448, 450 (8th Cir. 1989); Rautio v. Bowen, 862 F. 2d 176, 179 (8th Cir. 1988). As such, the court finds that substantial evidence on the record supports the ALJ's decision that Plaintiff's alleged depression is not severe.

The ALJ considered that on October 16, 2001, Plaintiff's blood pressure was 149/81 and that on August 21, 2002, his blood pressure was 144/84 with no signs of secondary damage to the eyes, heart, brain, kidneys, from hypertension. The court notes that Plaintiff's blood pressure was 131/80 in May 2002 and on June 3, 2003 it was 151/80. See Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992) (holding that a high blood pressure reading of 170/90 indicates only moderate hypertension); Brown v. Heckler, 767 F.2d 451, 453 (8th Cir. 1985) (holding that blood pressure

---

[3]        While records of October and November 2004 reflect that Plaintiff was prescribed Zoloft, the prescription of this medication was after the date of the ALJ's decision.

which measures within the range of 140-180/90-115 is considered mild or moderate, and that hypertension does not qualify as severe where it does not result in damage to the heart, eye, brain or kidney) (citing 20 C.F.R. Part 404, Subpart P, Appendix 1, 4.00 C).

The ALJ considered that Plaintiff had elevated hepatic transaminases going back to 1998, but which were *reduced by dietary restrictions and weight control.* Conditions which can be controlled by treatment are not disabling. See Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992); Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989). The ALJ further considered that as of May 30, 2002, Plaintiff had developed hyperlipidemia, for which medication was prescribed. The ALJ additionally considered the fact that Plaintiff had elevated liver signs, thought to be a side effect of the medication, for which Plaintiff refused a liver biopsy. A lack of desire to improve one's ailments by failing to follow suggested medical advice detracts from a claimant's credibility. Johnson v. Bowen, 866 F.2d 274, 275 (8th Cir. 1989) (holding that the ALJ can discredit subjective complaints of pain based on claimant's failure to follow prescribed course of treatment); Weber v. Harris, 640 F.2d 176, 178 (8th Cir. 1981). The court notes that a radiology report of August 20, 2002, stated an ultrasound of Plaintiff's gallbladder was essentially unremarkable.

In regard to Plaintiff's complaint of chest pain, the ALJ considered that an EKG of October 2001 was *negative* for heart disease and that an EKG and chest x-ray of February 19, 2004, were *negative.* The court notes that records of January 2004 state that an EKG showed *normal* sinus rhythm, no ischemic changes and that a chest x-ray showed no acute cardiopulmonary process and that Plaintiff's cardiac enzymes were *negative.* A radiology report of this same date states that Plaintiff's chest showed *no evidence* of acute cardiopulmonary change since Plaintiff's previous examination and that Plaintiff's heart was within *normal limits* in regard to size. Also, notes of

March 2, 2004, state that Plaintiff's heart was without murmur and that he was not in acute cardiac or pulmonary distress. Moreover, records of October 26, 2004, state that Plaintiff's pulmonary insufficiency was *mild* tricuspid valve regurgitation and that his mitral valve regurgitation was *mild to moderate* .

In regard to Plaintiff's allegations that he suffers from arthritis, back pain, and gout, the ALJ considered that Dr. Sparkman reported in August 2002 that Plaintiff had normal range of motion in any spinal or joint area; that he did not have any signs of joint swelling or other active signs of gout; that Plaintiff had normal grip strength; and that all other signs were normal. The court notes that Plaintiff told Dr. Sparkman that he could lift fifty pounds, comfortably sit for thirty minutes stand for one hour, and walk three blocks.

The ALJ further considered that a June 2003 MRI showed disc bulging but *no signs of disc herniation, spinal stenosis or nerve root impingement or compression*; that a March 2004 MRI showed nothing different; that on January 27, 2004, despite Plaintiff's alleging right shoulder and bilateral knee pain and continuing back pain, examination showed that he had *mildly* positive straight leg raising and only *mild* muscle weakness; that a right shoulder arthrogram of February 10, 2004, showed *no rotator cuff tear or other abnormality*; that x-rays of this same date showed only *mild* degenerative arthritis in both knees; that as of February 17, 2004, Plaintiff had *full range of motion* of his back with only slight muscle spasms; and that as of March 2, 2004, Plaintiff admitted that his "musculoskelatal was being controlled by Tylenol 3." See Estes, 275 F.3d at 725.

The court further notes a radiology report of December 8, 2003 describes Plaintiff's scoliosis as *mild* and states that disc spaces were fairly well maintained; that Dr. Hansbrough reported in January 2003 that Plaintiff's SLR was *mildly negative* with no weakness; that the impression of views of Plaintiff's knees on February 10, 2004, was *mild* bilateral degenerative arthritis and another report

of this date states that Plaintiff's knees showed no fracture or dislocation. Additionally, Dr. Hansbrough reported on February 19, 2004, that Plaintiff had only *mild* degenerative arthritis. Also, a radiology report of March 19, 2004 states that an MRI showed *mild* changes of degenerative arthritis, mild bulging disc without evidence of definite herniation, and well maintained intervertebral spaces.

The ALJ additionally found that Plaintiff does not have the signs most typically associated with chronic severe musculoskeletal pain such as muscle atrophy, persistent or reoccurring muscle spasms, neurological deficits or other signs of nerve root impingement, or significantly abnormal x-rays or other diagnostic tests. The ALJ concluded that the medical evidence did not establish an inability to ambulate effectively or to perform fine and gross motor skills effectively on a sustained basis, due to any musculoskelatal impairment.

The ALJ concluded that Plaintiff's abnormalities are slight and do not significantly affect his ability to perform basic work-related activities. Based on the above cited evidence the ALJ concluded that Plaintiff does not suffer from a severe impairment and that when considered in combination Plaintiff's impairments are not severe and that, therefore, he is not disabled. The court finds that this conclusion is based on substantial evidence on the record as a whole. The court further finds that even considering, arguendo, the additional records submitted by Plaintiff with his brief [4] that substantial evidence on the record as a whole supports the decision of the ALJ. Significantly, as emphasized above, Plaintiff's treating doctors characterized many of his impairments, including those which are musculoskeletal, as mild or mild to moderate; Plaintiff did not seek or receive treatment for depression during the relevant period; his blood pressure was not in the high range; his hepatic transaminases were controlled by weight and diet; he had normal EKGs; and he had normal range of

---

[4]     See note 2.

motion and grip. The court additionally finds that the conclusion of the ALJ that Plaintiff's allegation of impairments, either alone or in combination, do not provide symptoms and limitations of sufficient severity to prevent performance of all sustained work activity is consistent with the applicable Regulations requiring that to be found disabled a claimant must have a severe impairment or combination of impairments. 20 C.F.R. § § 404.1520, 404.1521, 416.920, 416.921. Because the ALJ found at Step 2 that Plaintiff was not disabled, he was not required to proceed further with the sequential analysis. See Goff, 421 F.3d at 790.

Although the ALJ was not required to proceed further with the sequential analysis after he determined that Plaintiff was not disabled at Step 2, the ALJ nonetheless addressed the findings of the vocational consultant who testified at the hearing. Any alleged error, therefore, on the part of the ALJ in consideration of the opinion of the vocational consultant is not relevant to a determination of whether the ALJ's decision is supported by substantial evidence as such error would not affect the outcome of this matter. See Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996) ("[A]n ALJ's arguable deficiency in opinion-writing technique does not require us to set aside a finding that is supported by substantial evidence.")

Moreover, the ALJ summarized the vocational consultant's testimony which was that Plaintiff would be unemployable if the he had to stay off of his feet at least seven days a week and could lift nothing above shoulder level. After considering at all of the above mentioned medical evidence, the ALJ concluded that the assumptions of the vocational consultant did not have a foundation in Plaintiff's medical records. As such, contrary to Plaintiff's assertion, the ALJ did consider the opinion of the vocational consultant but discounted her opinion because it was based on the conclusion that Plaintiff suffered from severe impairments. A hypothetical to a vocational expert need only include those limitations those which the ALJ finds credible. Sobania v. Sec'y of Health Educ. & Human

Servs., 879 F.2d 441, 445 (8th Cir. 1989); Rautio, 862 F.2d at 180. The hypothetical posed to the vocational expert in the matter under consideration included limitations which the ALJ did not find credible.

**B.      The ALJ's Credibility Findings:**

As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole and a court cannot substitute its judgment for that of the ALJ. Guillams, 393 F.3d at 801; Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882. To the extent that the ALJ did not specifically cite Polaski, case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, as also more fully set forth above, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Wheeler, 224 F.3d at 896 n.3; Reynolds, 82 F.3d at 258; Montgomery, 69 F.3d at 275. Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for ALJ to make. See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered."); Strongson, 361 F.3d at 1072; Brown v. Chater, 87 F. 3d 963, 966 (8th Cir. 1996). In addition to considering Plaintiff's medical records, as fully set forth above, the ALJ considered the following factors upon choosing to discredit Plaintiff's complaints of disabling pain.

First, the ALJ considered that none of the medical experts who treated Plaintiff have said or implied that he is disabled or incapacitated and that no medical expert has placed any restrictions on Plaintiff's ability to perform basic activities such as standing, sitting, walking, bending, lifting, and carrying. A record which contains no physician opinion of disability detracts from claimant's

subjective complaints. See Edwards v. Secretary of Health & Human Services, 809 F.2d 506, 508 (8th Cir. 1987); Fitzsimmons v. Mathews, 647 F.2d 862, 863 (8th Cir. 1981). Indeed, Dr. Sparkman who reviewed Plaintiff's medical records and who examined Plaintiff concluded that Plaintiff has the ability to perform work related functions. No other doctor offered an opinion in contradiction of Dr. Sparkman's opinion. As such, the court finds that the ALJ's considering that no doctor opined that Plaintiff or placed restrictions on him is based on substantial evidence on the record. Additionally, the ALJ's decision in this regard is consistent with the Regulations and case law.

Second, the ALJ considered that Plaintiff's hypertension, hyperlipidemia, hiatal hernia and reflux disease are all controlled by medication. The ALJ further considered that Plaintiff's musculoskeletal problems were being controlled by Tylenol 3. As stated above, conditions which can be controlled by treatment are not disabling. See Estes, 275 F.3d at 725.

Third, the ALJ considered Plaintiff's daily activities and that Plaintiff contends that they are restricted. The court notes that Plaintiff testified that he grocery shops, does laundry and yard work, talks on the phone a lot, and hunts. Also, Dr. Sparkman reported that Plaintiff drove about 60 miles to Dr. Sparkman's office and that he displayed no ill effects from the trip. While the undersigned appreciates that a claimant need not be bedridden before he can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with his subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. Eichelberger, 390 F.3d at 590 (holding that the ALJ properly considered that the plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805; Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992); Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987); Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir. 1987). Indeed, the Eighth Circuit holds that allegations

of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001) (citing Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987)). "Inconsistencies between [a claimant's] subjective complaints and [his] activities diminish [his] credibility." Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir.2005) (citing Riggins v. Apfel, 177 F.3d 689, 692 (8th Cir. 1999)). See also Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001); Nguyen v. Chater, 75 F.3d 429, 439-31 (8th Cir. 1996) (holding that a claimant's daily activities including visiting neighbors, cooking, doing laundry, and attending church were incompatible with disabling pain and affirming denial of benefits at the second step of analysis). The court finds, therefore, that the ALJ properly considered Plaintiff's daily activities upon choosing to discredit his complaints of debilitating pain. The court further finds that substantial evidence supports the ALJ's decision in this regard.

Fourth, the ALJ considered that Plaintiff has no surgeries or inpatient hospitalizations; that most of Plaintiff's medical records consist of outpatient checkups at the VA Hospital every one or two months; and that these records do not indicate the level of severity required. As stated above, seeking limited medical treatment is inconsistent with a claim of a disabling impairment. See Nelson, 946 F.2d at 1317; James for James, 870 F.2d at 450; Rautio, 862 F. 2d at 179.

The court also notes that despite Plaintiff's complaint of knee pain, he declined knee injection on February 19, 2004. This likewise is indicates that his complaint of knee pain is not credible. Brown, 87 F.3d at 965 (holding that a claimant's failure to comply with prescribed medical treatment is inconsistent with complaints of disabling pain).

For the reasons more fully set forth above, the court finds that the ALJ's credibility resolution is based on substantial evidence and that, in this regard, the decision is consistent with the Regulations and case law.

Additionally, as this court has considered the evidence which Plaintiff contends the Appeals Council failed to consider and as this evidence does not change the outcome of Plaintiff's case, the court finds without merit Plaintiff's contention that the Commissioner's decision is not based on substantial evidence because of the allegedly omitted evidence. Furthermore, for the reasons fully set forth above, the court finds that all of Plaintiff's allegations are without merit.

## VII.
## CONCLUSION

The Court finds that the Commissioner's decision is supported by substantial evidence contained in the record and should be affirmed. Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in his Brief in Support of the Complaint is **DENIED**; [Doc. 9]

**IT IS FINALLY ORDERED** that a separate Judgement shall be entered in favor of defendant and against Plaintiff in the instant cause of action and incorporating this Memorandum and Order.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
Dated this <u>30th</u> day of May, 2006          UNITED STATES MAGISTRATE JUDGE